UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRONTERA RESOURCES
CORPORATION, et al.,

        Plaintiffs,

   v.

STEPHEN HOPE, et al.,

        Defendants.

Case No. 19-cv-01996-RS

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

This action arises out of a battle for control between the Frontera Resources Caucasus Corporation ("FRCC"), a subsidiary of Plaintiff Frontera Resources Corporation ("FRC"), and Defendants Stephen Hope, Outrider Management, LLC, and Outrider Onshore, LP. Plaintiffs FRC and another subsidiary, Frontera International Corporation ("FIC"), maintain that Defendants set out to benefit themselves at the expense of Plaintiffs' financial viability in violation of numerous state laws. They previously sought a temporary restraining order ("TRO") enjoining Defendants from proceeding with any further allegedly illegal actions and from attempting to liquidate the FRCC, which was denied. As with their application for a TRO, Plaintiffs have failed to raise serious questions going to the merits, let alone a showing of likely success on the merits. For the reasons discussed below, their motion for preliminary relief is denied.[1]

---

[1] The facts of this case are set forth in this Court's prior order denying TRO and need not be repeated here.

## II. LEGAL STANDARD

To obtain preliminary relief, a plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has elaborated on that standard by suggesting the likelihood of success on the merits is subject to a "sliding scale." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) ("[T]he 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*."). As quoted in *Cottrell*, under the sliding scale test, "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tip sharply in the plaintiff's favor," provided, of course, that "plaintiffs must also satisfy the other [*Winter*] factors." *Id.* at 1135.

## III. DISCUSSION

As with their application for a TRO, Plaintiffs acknowledge their motion for preliminary relief is based only on the first two claims of its FAC: (1) breach of fiduciary duty and the duty of loyalty, and (2) intentional interference with prospective economic relations, both against Hope. (Mot. at 15, 17.) As to these claims, Plaintiffs have failed to carry their burden under *Winter*.

### A. Likelihood of Success on the Merits

Plaintiffs' allegations and proffered evidence do not support entitlement to preliminary relief. The bulk of their motion focuses on allegations regarding Hope's pre-2016 conduct; allegations which are irrelevant since they predate his appointment as a director of FRC and so have no bearing on whether he breached his fiduciary duties as a director. Similarly, they have no impact on Plaintiffs' claims for intentional interference with economic relations as those too are pegged to Hope's service as a director. (FAC ¶ 38.) Moreover, Plaintiffs' pre-2016 allegations appear to have been fully settled and released in connection with a Mediation Settlement Agreement between the parties in a prior bankruptcy action and related adversary proceeding in the Southern District of Texas. As for Hope's conduct after his board appointment, Plaintiffs

never explain why Hope's advocacy against the proposals they identified was improper. At base, Plaintiffs appear to argue that Hope's disagreement with the company's attempts to secure new loans violated his fiduciary duties and interfered with FRC's economic relations. Yet, they fail to counter Defendants' arguments that Hope refused to support these proposals both because they threatened OMF's first-priority lien position in favor of a new secured creditor and would transfer assets out of reach of OMF in violation of the Note Agreement, and that the proposals were therefore not in the best interest of FRC. Indeed, when the interest on OMF's loan was set to increase in light of events specified in the Note Agreement, Hope agreed on behalf of OMF to defer the payment of that interest for several months in 2018. This does not suggest Hope was intending to force Plaintiffs' default. Plaintiffs do not contend Hope voted against the infusion of equity capital, new unsecured notes, loans secured by second priority liens, or additional parity-lien debt contemplated in the Collateral Agency Agreement. Instead, Plaintiffs acknowledged at oral argument that Hope never *voted* against anything. There is nothing in Plaintiffs' pleadings or proffered evidence to suggest a serious question going to the merits, let alone a substantial likelihood of success on the merits.

Even if there were a basis for preliminary relief, significant doubts arise as to whether an injunction order would be effective. First, Plaintiffs have not brought suit against Outrider Master Fund, L.P. ("OMF"), a Cayman Islands exempted limited partnership and the actual holder of the collateral at issue here. As such, it is the entity with the authority to direct the collateral agent, MaplesFS Limited ("Maples"), to begin the liquidation of FRCC. Plaintiffs wholly fail to establish that Hope (or any Defendant) is the mastermind of Plaintiff's alleged harm such that enjoining him would necessarily prevent OMF or Maples from carrying on with the liquidation. Plaintiffs do not show that Defendants are the ones who can stop the liquidation of FRCC and their speculation that Hope exercises some form of secret influence over those actors is not enough. Accordingly, Plaintiffs' motion to enjoin these Defendants necessarily fails.

Additionally, it appears that any preliminary relief is likely moot. Even if Plaintiffs added OMF and Maples to this action, the liquidation process has already begun and Defendants can no

longer control the liquidation of FRCC. Under Cayman Islands law, once voluntary liquidators are appointed to wind up the company's affairs and distribute its assets, all the powers of the directors cease, except so far as that expressly reserved to them by a resolution passed at a corporate general meeting or the voluntary liquidator sanctions such ongoing director authority. Companies Law § 119(5) (2018 Revision) (Cayman Is.); Companies Law Winding Up Rules, Order 13, Rule 3 (2018) (Cayman Is.). The voluntary liquidators are the ones who exercise broad powers to direct the company's business as necessary for its liquidation. Companies Law Winding Up Rules, Order 13, Rule 3 (2018) (Cayman Is.) (citing Companies Law Schedule III (2018 Revision) (Cayman Is.)).[2] Plaintiffs do not allege any facts or provide evidence to suggest that the directors have any power to affect the liquidation of FRCC. Moreover, the only individual director being sued here, Defendant Hope, has resigned from his board position.[3] Again, granting injunctive relief would not prevent the liquidation of FRCC and so Plaintiffs' motion fails on this additional ground. *See Dream Palace v. Cty. of Maricopa*, 384 F.3d 990, 999-1000 (9th Cir. 2004) (noting a case becomes moot when the issues presented no longer constitute a live controversy).

---

[2] The voluntary liquidators must apply to the Cayman Islands court for an order that the liquidation continue under court supervision, unless the directors have signed a declaration of solvency within 28 days of the commencement of the liquidation. Companies Law § 124(1) (2018 Revision) (Cayman Is.). Once the liquidation is supervised by the court, it may appoint an official liquidator who has the same broad powers as described for voluntary liquidators. Companies Law §§ 105(1), 110. Defendants represented at oral argument that the directors have submitted a declaration of solvency to the voluntary liquidators. This does not deprive the liquidators' of their authority to continue with the liquidation, however, as they may still apply to the Cayman Islands court for the court to supervise the liquidation if they believe either: (1) the company is or is likely to become insolvent; or (2) court supervision is necessary to facilitate a more effective, economic, or expeditious liquidation in the interests of the contributories and creditors. Companies Law § 131 (2018 Revision) (Cayman Is.).

[3] Plaintiffs make the tenuous argument that Hope and the other Defendants retain control over the voluntary liquidators by controlling their compensation for the liquidation. First, Hope is no longer a member of the board, and the rate and amount of the voluntary liquidators' compensation is fixed and payment is authorized by resolution of the company. Companies Law § 130(2) (2018 Revision) (Cayman Is.). Moreover, the voluntary liquidators have the option under Cayman Islands law to apply to the Cayman Islands court to fix the rate and amount of their compensation and expenses, if they are dissatisfied with the company's decision. *Id.* § 130(4).

### B. Remaining *Winter* Factors

The motion fares no better under the remaining *Winter* factors. First, Plaintiffs fail to demonstrate they are likely to suffer irreparable harm in the absence of the requested injunctive relief. As discussed above, even if an injunction were issued against the current Defendants, that would do nothing to stop the liquidation. The balance of the equities similarly do not favor Plaintiffs. As noted in the prior TRO order, it is a cause of considerable concern that while the Complaint in this case appears to have been filed before the Cayman Islands action was resolved, Plaintiffs failed to disclose the existence of that pending action. (Order at 4:12-14.) Indeed, the Cayman Islands court saw fit to discharge the preliminary injunction in that action based on its finding that Plaintiffs' case had "no real prospects of success and/or fails to raise a serious question to be tried." (Dkt. 23-10, Cornwell Decl., Ex. G at ¶ 47(b).) Plaintiffs' argument that they thought the Cayman Islands action was irrelevant to this case and that if Defendants disagreed they would so inform the Court, (Mot. at 12 n.1), is disingenuous. Plaintiffs had the obligation under Local Rule 3-13 to disclose material facts to the Court and sought the issuance of temporary injunctive relief with no notice to Defendants. In addition to their failure to disclose, Plaintiffs' failure to take responsibility for the required disclosure gives further evidence of their unclean hands and lack of entitlement to the balance of the equities.[4] Finally, neither party provides arguments regarding the public interest prong, but it is clear that the public has little interest in injunctive relief that cannot stop the liquidation. Indeed, public interest appears to weigh the other way: protecting the right of secured creditors to collect their collateral.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for preliminary injunction is denied.

---

[4] The determination of whether sanctions will issue against Plaintiffs will be addressed in a separate order after further briefing.

**IT IS SO ORDERED**.

Dated: June 7, 2019

_____
RICHARD SEEBORG
United States District Judge